**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA**

**v.** **Criminal No. 3:16cr103-3**

**TYQUAN DEMARIO MACCUTCHEON,**

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Tyquan Demario MacCutcheon's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c) and U.S.S.G. Amendment 821 (the "Motion" or "Motion for Sentence Reduction"). (ECF No. 209.) The United States responded in opposition to the Motion, (ECF No. 212), and Mr. MacCutcheon replied, (ECF No. 214).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion for Sentence Reduction.

## I. Background

On September 6, 2016, a Grand Jury for the Eastern District of Virginia returned a three-count Indictment against Mr. MacCutcheon and three co-defendants. (ECF No. 23.) The Indictment charged Mr. MacCutcheon with one count of Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); and one count of Using, Carrying, or Possessing a Firearm During and in Relation to or in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§ 924(c) and 2 (Count 2). (ECF No. 23, at 1–2.)

Mr. MacCutcheon entered into a plea agreement with the United States pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)[1] (a "Type-C agreement") in which the parties agreed to a sentence of 324 months' incarceration, composed of 240 months' incarceration on Count 1 and 84 months' incarceration on Count 2 to run consecutively. (ECF No. 40, at 2.)

On November 14, 2016, Mr. MacCutcheon appeared before this Court for a change of plea hearing. (ECF No. 39, at 1.) At that hearing, Mr. MacCutcheon pled guilty to Counts 1 and 2 of the Indictment pursuant to the plea agreement. (ECF No. 39.) The Court scheduled Mr. MacCutcheon's sentencing hearing for February 22, 2017 and directed the United States Probation Office to prepare a Presentence Report ("PSR") in advance of sentencing. (ECF No. 40.)

The plea agreement, (ECF No. 40), and the accompanying statement of facts, (ECF No. 41), describe the conduct in Mr. MacCutcheon's underlying offense. On May 12, 2016, at approximately 1:55 a.m., Mr. MacCutcheon and his three co-defendants (collectively, "Defendants") entered a Walgreens Pharmacy in Henrico, Virginia (the "Henrico Robbery"). (ECF No. 41 ¶ 4.) Two of the four men stopped at the front counter; one pointed a firearm at the

---

[1] Federal Rule of Criminal Procedure 11(c)(1) provides, in relevant part:

> (1) *In General.* An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> . . .
>
> > (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(C).

store employee working at the front counter and both men demanded money from the store's cash registers. (ECF No. 41 ¶ 4.) They "yelled and cursed" at the store employee to move faster; "warned her that if she touched any buttons they would shoot her"; and "started to count down from five." (ECF No. 41 ¶ 4.) The employee complied with their demands, and the two men stole money from two cash registers, stole the clerk's phone, and told the clerk to "get onto the floor." (ECF No. 41 ¶ 4.)

The other two men went to the rear of the store, where they encountered another store employee at the pharmacy counter. (ECF No. 41 ¶ 5.) One of the men "jumped over the counter at the pharmacy"; "pointed a black firearm" at the employee; "demanded money from the cash registers"; and "warned [the employee] to hurry up." (ECF No. 41 ¶ 5.) The man without the firearm told the man with the firearm that he needed to "cap this bitch," referring to the store employee. (ECF No. 41 ¶ 5.) The man with the gun "placed the firearm to the back of the [employee's] head, directed her to open the cash registers at the drive thru window and at the counter of the pharmacy, and started to count down while telling [the employee] to hurry." (ECF No. 41 ¶ 5.) The employee complied, and the suspects told her to get onto the floor before they fled. (ECF No. 41 ¶ 5.) In total, Defendants "stole approximately $480.00." (ECF No. 41 ¶ 5.)

On May 16, 2016, at approximately 3:00 a.m., Defendants robbed a Walgreens Pharmacy store in Durham, North Carolina (the "Durham Robbery"). (ECF No. 41 ¶ 6.) Mr. MacCutcheon and two other men entered the store wearing masks and blue latex gloves. (ECF No. 41 ¶ 6.) Mr. MacCutcheon approached an employee at the front of the store, pointed a firearm at him, and demanded money from the cash registers. (ECF No. 41 ¶ 6.) Mr. MacCutcheon then ordered the employee to open a safe and cash register in the store's "photo center." (ECF No. 41 ¶ 6.) While Mr. MacCutcheon was at the photo center, two of the other

men jumped the counter at the pharmacy, pointed a firearm at the pharmacist, and demanded that the pharmacist open the cash register and provide them with Percocet and Vicodin. (ECF No. 41 ¶ 6.) The pharmacist complied. (ECF No. 41 ¶ 6.) The two men then "forced" the pharmacist to go to the photo center, and Defendants ordered the store employee and pharmacist to get onto the floor while the Defendants fled. (ECF No. 41 ¶ 6.) In total, Defendants "stole U.S. currency and medications of a value of $4,814.42." (ECF No. 41 ¶ 6.)

A third employee in the Walgreens in Durham escaped to the store's main office during the robbery and called the police. (ECF No. 41 ¶ 7.) A Durham police officer responding to the scene performed a traffic stop on a car leaving the Walgreens, during which he observed, among other things, a black and silver firearm in the backseat, blue latex gloves, a Walgreens bag full of prescription pills, and U.S. currency. (ECF No. 41 ¶ 7.)

Defendants were arrested for the Durham Robbery. (*See* ECF No. 41 ¶ 8.) After their arrest, Federal Bureau of Investigations Agents from the Eastern District of Virginia interviewed Defendants. (ECF No. 41 ¶ 9.) Mr. MacCutcheon identified himself by photo from the Henrico Robbery. (ECF No. 41 ¶ 10.) He also admitted to participating in four additional robberies in the Eastern District of Virginia between May 6, 2016 and May 12, 2016, and two robberies in North Carolina on May 16, 2016, including the Durham Robbery. (ECF No. 41 ¶¶ 10–11.)

Prior to sentencing, the probation officer prepared a PSR for Mr. MacCutcheon. (ECF No. 57.) According to the law at the time, Mr. MacCutcheon had a Total Offense Level of 31. (ECF No. 57 ¶ 80.) Mr. MacCutcheon's prior criminal convictions resulted in a criminal history score of 3, but because Mr. MacCutcheon committed the offenses while on a term of probation, he received an additional 2 points pursuant to U.S.S.G. § 4A1.1(d) (2016), for a total criminal history score of five. (ECF No. 57 ¶¶ 87–89.) Mr. MacCutcheon's criminal history score of five

correlated to a Criminal History Category of III. (ECF No. 57 ¶ 89.) Together, Mr. MacCutcheon's Total Offense Level of 31 and Criminal History Category III resulted in a Sentencing Guidelines range of 135–168 months' imprisonment on Count 1 and 84 months' imprisonment on Count 2, to run consecutively. (ECF No. 57, at 24.)

On February 22, 2017, the Court held a sentencing hearing for Mr. MacCutcheon. (ECF No. 78.) At that hearing, without objection from the parties, the Court found that the "guidelines [were] correctly articulated" in the PSR and "adopt[ed] the guideline range and the factual findings and the guideline application." (ECF No. 132, at 3:22–4:2.) But in sentencing Mr. MacCutcheon, the Court noted that "the guidelines, as calculated, would not be accurate." (ECF No. 132, at 7:18–19.) Thus, consistent with the parties' plea agreement, the Court sentenced Mr. MacCutcheon to an above-Guidelines term of 240 months' imprisonment on Count 1 and a term of 84 months' imprisonment on Count 2, to be served consecutively. (ECF No. 85, at 2.)

Mr. MacCutcheon is housed at McDowell FCI in Welch, West Virginia. *See Fed. Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 14, 2026). The Bureau of Prisons ("BOP") identifies Mr. MacCutcheon's release date as August 7, 2039. *Id.*

## **II. Sentence Reduction Under Amendment 821**

18 U.S.C. § 3582(c)(2) authorizes a criminal defendant to move for a reduction of his or her sentence when the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.*; *Dillon v. United States*, 560 U.S. 817, 821 (2010) ("When the [Sentencing] Commission makes a Guidelines amendment retroactive, 18 U.S.C. § 3582(c)(2) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision.").

In *Dillon v. United States*, the United States Supreme Court set forth a two-step process for ruling on a motion for sentence reduction pursuant to § 3582(c)(2). 560 U.S. at 821. "'First, the court is required 'to follow the Commission's instructions in [U.S.S.G.] § 1B1.10 to determine the [defendant's] eligibility for a sentence modification and the extent of the reduction authorized.'" *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019) (quoting *Dillon*, 560 U.S. at 827). U.S.S.G. § 1B1.10(b)(1), in turn, "requires the court to begin by 'determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Id.* (quoting *Dillon*, 560 U.S. at 827).

Second, after determining that a sentence reduction is available, a court must consider the 18 U.S.C. § 3553(a) sentencing factors[2] and any relevant post-conviction conduct to determine whether "in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827; *see also* U.S.S.G. § 1B1.10, cmt. 1(B).

In November 2023, the United States Sentencing Commission promulgated Amendment 821, U.S.S.G. App'x C, amend. 821, and made its provisions retroactive effective February 1, 2024, *see* U.S.S.G. § 1B1.10(e)(2) & Application Note 7. Relevant here, Amendment 821

---

[2] The 18 U.S.C. § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); (2) the need for the sentence to: afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment, § 3553(a)(2)(B)–(D); (3) the kinds of sentences available, § 3553(a)(3)–(4); (4) any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(6); (5) the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and, (6) the need for restitution, § 3553(a)(7).

reduces "status points" under U.S.S.G. § 4A1.1 for certain offenders with less serious criminal histories. *Id.* Prior to Amendment 821, defendants received two status points if they committed an offense while under a criminal justice sentence, including probation. Amendment 821 reduces the number of "status points" an offender receives to zero or one depending on the defendant's criminal history. U.S.S.G. § 4A1.1(e) (2023).[3]

**III. Analysis**

Mr. MacCutcheon argues that he is eligible for a sentence reduction "[e]ven though this Court sentenced [him] pursuant to its acceptance of a binding plea agreement calling for a sentence outside the advisory guidelines" because the Court "presumably considered the guidelines range as part of the framework it relied on in accepting the [plea] agreement." (ECF No. 209, at 3 (citing *Hughes v. United States*, 584 U.S. 675 (2018).) Accordingly, Mr. MacCutcheon contends, because Amendment 821 retroactively eliminated the two "status

---

[3] Specifically, Amendment 821 provides, in pertinent part:

Section 4A1.1 is amended—

by striking subsection (d) as follows:

> "(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.";

by redesignating subsection (e) as subsection (d);

and by inserting at the end the following new subsection (e):

> "(e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

U.S.S.G. App'x C, amend. 821, Part A (Status Points under § 4A1.1).

points" that attached to his criminal history score under U.S.S.G. § 4A1.1, he is eligible for a two-point decrease to his criminal history score, reducing his criminal history score from five points to three points and moving him from Criminal History Category III to II. (ECF No. 209, at 2–3.) In conjunction with his Total Offense Level of 31, Mr. MacCutcheon submits that his revised advisory guidelines range calls for a term of imprisonment of 121–151 months on Count 1, reduced from 135–168 months' imprisonment at the time of sentencing. (ECF No. 57, at 24.) Mr. MacCutcheon asks this Court to "reduce the sentence on Count One by 17 months, the difference between the respective high ends of the original and retroactive guidelines of 168 and 151 months." (ECF No. 209, at 5.)

The United States agrees that Mr. MacCutcheon is "eligible for relief" under Amendment 821 and *Hughes*. (ECF No. 212, at 1, 4.) "However," the United States contends, "due to the nature of the crimes [Mr. MacCutcheon] committed and his conduct while incarcerated, the Court should exercise its discretion by denying [Mr. MacCutcheon's] motion for a sentence reduction." (ECF No. 212, at 1.)

For the reasons articulated below, the Court concludes that Mr. MacCutcheon is not eligible for relief under § 3582(c)(2) because the sentence it imposed was not "based on" the advisory Guidelines range, and that even if his sentence was "based on" the Guidelines range, the Court would deny the Motion after considering the § 3553(a) factors and Mr. MacCutcheon's post-conviction conduct. Accordingly, the Court will deny Mr. MacCutcheon's Motion.

### A. Mr. MacCutcheon is Ineligible for a Sentence Reduction Under 18 U.S.C. § 3582(c)(2) Because the Court Did Not Impose Mr. MacCutcheon's Sentence "Based on" the Guidelines

Mr. MacCutcheon and the United States contend that this Court imposed Mr. MacCutcheon's sentence "based on" the Guidelines, meaning that the Court can consider the

impact of Amendment 821 on Mr. MacCutcheon's sentence. (ECF No. 209, at 3; ECF No. 212, at 4.) The Court finds otherwise.

As the Court noted above, 18 U.S.C. § 3582(c)(2) provides that a "court may reduce the term of imprisonment" "in the case of a defendant who has been sentenced to a term of imprisonment *based on a sentencing range* that has subsequently been lowered by the Sentencing Commission." *Id.* (emphasis added). In *United States v. Hughes*, the Supreme Court considered whether a defendant who enters into a Type-C agreement specifying a particular sentence is eligible for relief under § 3582(c)(2). 584 U.S. at 680. The *Hughes* court answered in the affirmative. It held that so long as the defendant's Guidelines range was "part of the framework the district court relied on in imposing the sentence or accepting the [plea] agreement," that sentence is "based on" the Guidelines. *Hughes*, 584 U.S. at 685. The Supreme Court went on to explain that "a defendant's sentence will be 'based on' his [or her] Guidelines range" "in most cases." *Hughes*, 584 U.S. at 687–88. Thus, "absent clear demonstration, based on the record as a whole, that the court would have imposed the same sentence regardless of the Guidelines," "most" defendants sentenced pursuant to a Type-C agreement "will be eligible for relief under § 3582(c)(2)" when the Sentencing Commission lowers a defendant's Guidelines range. *Id.*

The *Hughes* court acknowledged, however, that in cases where the Guidelines range is not "a relevant part of the analytic framework the judge used to determine the sentence or to approve the [plea] agreement, then the defendant's sentence was not based on that sentencing range, and relief under § 3582(c)(2) is unavailable." *Id.* at 687 (quotation omitted); *see Koons v. United States*, 584 U.S. 700, 705 (2018) (holding that defendants' sentences were "clearly" not based on the Guideline's ranges because the sentencing court "scrapped the ranges in favor of

the mandatory minimums and never considered the ranges again"); *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) ("The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range."); *United States v. Burrell*, No. 3:04-cr-364 (JAG), 2023 WL 7726404, at *1, *3 (E.D. Va. Nov. 15, 2023) (finding that the defendant's sentence, imposed pursuant to a Type-C agreement, was not "based on" the Guidelines where the defendant waived his rights to a PSR, the probation office prepared a PSR but did not calculate the defendant's Guidelines range, and probation did not send a copy of the PSR to the sentencing court). In considering whether the sentence imposed is "based on" the Guidelines, "[w]hat matters . . . is the role that the Guidelines range played in the selection of the sentence eventually imposed." *Koons*, 584 U.S. at 706. Just because a district court judge calculates the Guidelines range—as is required in each case—it "does not follow that any sentence subsequently imposed must be regarded as 'based on' a Guidelines range." *Id.*

This is one unusual case where the sentence was not "based on" the Guidelines. While the plea agreement did specify that the Court would "defer a decision on whether to accept the proposed guilty plea pending receipt and review of [the PSR]," the plea agreement did not include an anticipated Guidelines range and specified only an agreed length of incarceration on each count. (ECF No. 40, at 3); *see also United States v. Dinkins*, No. JKB-19-36, 2026 WL 1593586, at *2 (D. Md. June 3, 2026). In addition, although this Court ordered the probation office to prepare a PSR and adopted the PSR and its Guidelines calculations at sentencing, (ECF No. 132, at 3:22–4:12); *cf. Burrell*, 2023 WL 7726404, at *1, *3, the Court ultimately concluded that, "having reviewed the information," "the guidelines, as calculated, would not be accurate," (ECF No. 132, at 7:17–19). Citing Mr. MacCutcheon's conduct, including the number of robberies he participated in across various jurisdictions and the impact of his behavior on the

victims, the Court adopted the "sentence that is recommended . . . in the plea agreement." (ECF No. 132, 7:20–8:14.)

In sum, because the Guidelines range "was not a relevant part of the analytic framework that [this Court] used to determine the sentence"—indeed, this Court expressly rejected the Guidelines in favor of the agreed upon above-Guidelines sentence—Mr. MacCutcheon's sentence "was not 'based on' a sentencing range that has since been lowered by the Sentencing Commission." *Dinkins*, 2026 WL 1593586, at *2 (citing *Hughes*, 584 U.S. at 687); *cf. United States v. Palmer*, No. 7:10-cr-2, 2019 WL 3797360, at *2 (W.D. Va. Aug. 12, 2019) (finding defendant eligible for a sentence reduction where the sentencing court imposed a sentence agreed to in a Type-C agreement because the sentencing court "expressly noted that [the] sentence was 'within [the] advisory guideline range'") (second alteration in original). Accordingly, Mr. MacCutcheon is not entitled to relief under § 3582(c)(2).

### B. Were Mr. MacCutcheon Eligible for a Sentence Reduction under 18 U.S.C. § 3582(c)(2), the Court Would Deny the Motion Based on the § 3553(a) Factors and Mr. MacCutcheon's Post-Conviction Conduct

Were the Court to assume that Mr. MacCutcheon's sentence was "based on" the Guidelines such that he would be eligible for relief under § 3582(c)(2), the Court would deny the Motion based on the statutory sentencing factors and Mr. MacCutcheon's post-conviction conduct.

The Court agrees with Mr. MacCutcheon[4] that, were he eligible for a sentence reduction under § 3582(c)(2), Amendment 821 would reduce his Guidelines range on Count 1.

---

[4] The United States agrees that Amendment 821 reduces Mr. MacCutcheon's Guidelines range on Count 1 but mistakenly submits that Mr. MacCutcheon's Guidelines range would be reduced to "151–181 months," a range higher than the 135–168 month range that applied at sentencing, (ECF No. 57, at 24).

Specifically, removing the two "status points" Mr. MacCutcheon received under U.S.S.G. § 4A1.1(d) reduces Mr. MacCutcheon's Criminal History Score from five to three, his criminal history Category from III to II, and his Guidelines range on Count 1 from 135–168 months' to 121–151. (ECF No. 57, at 24; *see also* ECF No. 232, at 2 (probation position).)

Nevertheless, application of the § 3553(a) factors and consideration of Mr. MacCutcheon's post-conviction conduct would not justify reducing Mr. MacCutcheon's sentence. As to the nature and circumstances of the offense, as this Court explained at sentencing—and as Mr. MacCutcheon concedes in his briefing—Mr. MacCutcheon committed a series of "vicious" robberies across multiple jurisdictions that involved brandishing weapons and threatening the lives of store employees.

Regarding Mr. MacCutcheon's circumstances, the Court recognizes that Mr. MacCutcheon endured an extremely hard childhood, has a history of substance abuse, and that he committed the instant offenses when he was only 25. (ECF No. 57, at 3, 20–22.) The Court also acknowledges that Mr. MacCutcheon has participated in over 100 hours of educational courses while in BOP custody, as well as a 12.5 hour drug education course. (ECF Nos. 209-4, 209-5.) While these circumstances weigh in Mr. MacCutcheon's favor, his criminal history weighs against him. Despite his relatively young age at the time of the offense, Mr. MacCutcheon had a significant criminal history, including convictions for assault and battery of a family member and destruction of property. (ECF No. 57, at 16–17.) On balance, Mr. MacCutcheon's circumstances weigh against reducing his sentence.

With respect to deterrence, the BOP classified Mr. MacCutcheon at a high-risk recidivism level, and until relatively recently, he was housed in a high security prison. (ECF No. 209, at 4 & n.1; ECF No. 209-1, at 2.) In addition, Mr. MacCutcheon has a significant

disciplinary history while in BOP custody, and while many of his infractions occurred several years ago, they nevertheless weigh against him. (ECF No. 209-3 (noting infractions for destruction of property, assaulting without serious injury, engaging in a group demonstration, and fighting with another person).)

Finally, the Court observes, as it did at sentencing, that the plea agreement offered Mr. MacCutcheon significant sentencing benefits. (ECF No. 132, at 8:1–6; *see also* ECF No. 212, at 5 (United States' response explaining that Mr. MacCutcheon's original sentence was "bargained for" in that he "avoided mandatory minimum sentences on the multiple 924(c) counts he could have faced if they had been prosecuted and proved beyond a reasonable doubt"); *Hughes*, 584 U.S. at 689 ("The district court can consider the benefits the defendant gained by entering a Type-C agreement when it decides whether a reduction is appropriate."). This benefit to Mr. MacCutcheon weighs against reducing his sentence.

In sum, even if Mr. MacCutcheon's sentence was "based on" the Guidelines such that he was eligible for a reduced sentence under § 3582(c)(2), the Court would deny Mr. MacCutcheon's Motion.

## IV. Conclusion

For the reasons explained above, the Court will deny Mr. MacCutcheon's Motion for Sentence Reduction. (ECF No. 209.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 10/14/26
Richmond, Virginia